Lisa M. Gomez (LMG 7357)
Cohen, Weiss and Simon LLP
900 Third Avenue
New York, New York 10022
(212) 563-4100

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------------------------X

| | |
|---|---|
| PETER McGOURTY, AS CHAIRMAN OF THE BOARD OF TRUSTEES OF THE NORTHERN NEW JERSEY TEAMSTERS BENEFIT PLAN, | **DOCUMENT FILED ELECTRONICALLY** |
| Plaintiff, | **COMPLAINT** |
| - against - | |
| PORT ELIZABETH TERMINAL WAREHOUSE CORP., | |
| Defendant. | |

-------------------------------------------------------------------X

Plaintiff Peter McGourty, as Chairman of the Board of Trustees of the Northern

New Jersey Teamsters Benefit Plan ( the "NNJ Plan"), with the principal place of business of the

NNJ Plan at 810 Belmont Avenue, North Haledon, New Jersey 07508, by his attorneys, Cohen,

Weiss and Simon LLP, as and for his complaint against Port Elizabeth Warehouse Corp. ("Port

Elizabeth"), with its principal place of business at 201A Export Street, Port Newark, New Jersey

07714, alleges as follows:

      1.      This is an action by a fiduciary of an employee welfare benefit plan for

monetary and injunctive relief under Sections 502 and 515 of the Employee Retirement Income

Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132 and 1145.  This action arises

from the failure of defendant Port Elizabeth t to make contributions to the NNJ Plan as required

by ERISA, the applicable collective bargaining agreements ("CBA") between Port Elizabeth

and Teamsters Local 11, (the "Union"), and the Second Amended and Restated Agreement and

Declaration of Trust governing the NNJ Plan.

**JURISDICTION AND VENUE**

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331;

Sections 502(a)(3), 502(e)(1), 502(f), and 515 of ERISA; and 29 U.S.C. §§ 1132(a)(3),

1132(e)(1), 1132(f), and 1145.

3.      Venue lies in this district pursuant to Section 502(e)(2) of ERISA, 29

U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391(b), as Port Elizabeth's principal place of business is

in this District.

**THE PARTIES**

4.      Plaintiff is the Chairman of the Board of Trustees of the NNJ Plan and is a

"fiduciary" of the NNJ Plan as that term is defined in Section 3(21)(A) of ERISA, 29 U.S.C.

§ 1002(21)(A), and within the meaning of Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).

Plaintiff, along with the other members of the Board of Trustees, has discretion and control over

the assets and administration of the NNJ Plan.  As Chairman of the Board of Trustees of the NNJ

Plan, Plaintiff is authorized to bring this action on the NNJ Plan's behalf.

5.      The NNJ Plan is an "employee benefit plan" as defined in Section 3(3) of

ERISA, 29 U.S.C. § 1002(3), and a "multiemployer plan" within the meaning of Section

3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained pursuant to a Second

Amended and Restated Agreement and Declaration of Trust (the "Trust Agreement").  The NNJ

Plan is jointly administered by a Board of Trustees made up of representatives of employers and

employees pursuant to the requirements of Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C.

§ 186(c)(5).

6.      Upon information and belief, Port Elizabeth is, and at all times relevant to this action has been, a corporation organized and existing under the laws of the State of New Jersey authorized to do business in the State of New Jersey.  At all times relevant to this action, Port Elizabeth was an "employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5).

7.      The NNJ Plan is a third-party beneficiary of the collective bargaining agreements that require contributions to be made to the NNJ Plan.

## THE COLLECTIVE BARGAINING AGREEMENT

8.      At all times relevant to this action, Port Elizabeth was a party to CBAs with the Union that established the terms and conditions of employment for all bargaining unit employees of Port Elizabeth and required Port Elizabeth, *inter alia*, to pay monthly contributions to the NNJ Plan for all employees covered by the CBAs at the rates set forth therein.

9.      The CBAs and the Trust Agreement establishing the NNJ Plan are agreements between the Union and various employers within the meaning of Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145.

## THE TRUST AGREEMENT

10.      Port Elizabeth is an "Employer" as defined in the Trust Agreement.  Port Elizabeth is bound to the terms and provisions of the Trust Agreement by contributing to the NNJ Plan and accepting the NNJ Plan's coverage for its employees.

11.      The Trust Agreement requires that Port Elizabeth pay contributions on a monthly basis as provided in the CBAs.

12.      Under Article III, Sections 4 and 11 of the Trust Agreement, the Trustees or their authorized auditors shall have the right to examine the employer's payroll and other records to determine the amounts of employer contributions required by the collective bargaining

- 3 -

agreements, and to verify the accuracy of said records (an "audit").  Article III, Section 11 goes on to state that if the Trustees commence legal proceedings or an arbitrator to recover amounts owed pursuant to an audit, the employer is liable for the cost of the audit as well as the unpaid contributions, interest, liquidated damages, and any other amounts under Article III of the Trust Agreement and ERISA.

13.    Under Article XIV, Section 1 of the Trust Agreement, each employer is required to provide to the Trustees "such records and information that the Trustees may require in connection with the [NNJ Plan] and changes thereto, and in connection with verifying the accuracy of Employer contributions and payment of benefits to Employees."

14.    Under Article III, Section 3 of the Trust Agreement, the Trustees have the power to demand, collect, and receive employer contributions and are authorized to take steps, including the institution of legal or administrative proceedings, to collect delinquent contributions.  In addition, under Article III, Section 5 of the Trust Agreement, the Trustees of the NNJ Plan may require "the payment of interest upon such delinquencies" and "the payment by the Employer to the [NNJ Plan] of counsel fees, auditing fees and such other costs and expenses incurred, or otherwise incurrable, by the [NNJ Plan] in connection with the recovery of Employer delinquencies."

15.    Article III, Section 10 of the Trust Agreement provides that in any suit or proceeding to collect contributions or other payments due to the NNJ Plan, "the Employer shall be liable not only for the contributions or other payments which may be due but for all expenses incurred in the collection thereof including, without limitation, reasonable attorney's fees [and] auditor's fees."

16.    Under Article III, Section 14 of the Trust Agreement, an employer who fails to remit contributions by the due date must pay for interest on the unpaid contributions at

the rate of twelve percent (12%) per year from the date payment was due to the date payment is made. In addition, the Trust Agreement provides that if the Trustees bring an action on behalf of the NNJ Plan to enforce the Employer's obligation thereunder and a judgment is awarded in favor of the NNJ Plan, the Court "shall award [the NNJ Plan] the unpaid contributions, interest on the unpaid contributions ... liquidated damages equal to the greater of the amount of interest on the unpaid contributions or twenty percent (20%) of the unpaid contributions; reasonable attorney's fees and costs of the action; and such other legal or equitable relief as the court deems appropriate."

## THE PAYROLL AUDITS

17. The NNJ Plan's auditors performed an audit of Port Elizabeth's payroll and other records for the period October 1, 2011 through December 31, 2013 (the "Audit").

18. The auditors issued a report of their findings to the NNJ Plan in 2014. The auditors' findings indicated that Port Elizabeth had failed to properly report or remit contributions on behalf of employees covered by the CBA during the period covered by the Audit. Specifically, the Audit revealed that Port Elizabeth owes the NNJ Plan $26,432.00 in unpaid contributions for the Audit period, as well as interest on said contributions through March 31, 2014 in the amount of $4,066.42, plus additional interest at the rate of 12% per annum from March 31, 2014, until the date payment of the amounts owed is received. In addition to these amounts, Port Elizabeth owes $1,425.00 for the cost of the Audit.

19. The NNJ Plan sent a copy of the Audit report and a demand for payment to Port Elizabeth on April 14, 2014. After no response was received, the NNJ Plan sent Port Elizabeth a second notice and demand for payment on May 7, 2014. After no response was received to the second notice, the NNJ Plan sent Port Elizabeth a final demand on July 3, 2014.

20.    On August 27, 2014, counsel for the NNJ Plan reiterated the demand for payment of the Audit as well as interest at the rate of 12% per annum through the date payment is received.  The letter advised that if payment was not received within ten (10) business days, legal action would be recommended to collect the amounts due under the Audit and, additionally, liquidated damages in the amount of 20% of the greater of the unpaid contributions or the unpaid interest accrued under the Audit, and attorneys' fees and costs, including the Audit fee, as provided under Section 502(g)(2) of ERISA and the Plan documents.  After no response was received, counsel for the NNJ Plan referred the dispute for arbitration on March 13, 2015 in accordance with the Trust Agreement.  Later in 2015, the NNJ Plan agreed to defer the arbitration based upon discussions with representatives of Port Elizabeth in which counsel for the NNJ Plan advised Port Elizabeth that an audit of a subsequent period needed to be conducted and the parties agreed to defer the arbitration while the subsequent audit was conducted and attempts were made to resolve the Audit and any findings for a subsequent audit period.

21.    During 2016 and most of 2017, counsel for the NNJ Plan and the NNJ Plan's auditors attempted to work with Port Elizabeth to agree upon dates for the subsequent audit, to no avail.  The subsequent audit was final scheduled in late 2017 and an audit report listing the findings of that audit was issued in December 2017.  Counsel for the NNJ Plan contacted Port Elizabeth on December 6, 2017 to advise of the findings of the subsequent audit period and demand payment for the amounts owed for both periods.  Port Elizabeth responded on December 18, 2017, advising that it would review the findings of the subsequent audit but that it understood that the 2011-2013 audit was "taken care of" and that no monies were owed.  Since then, Port Elizabeth has advised that it would consult with its former controller regarding the Audit and advise of his findings.

22.     As of the date of filing of this complaint, the amounts owed pursuing to the Audit remain unpaid and outstanding and Port Elizabeth has not submitted information regarding any dispute it has with the Audit findings.

## CAUSE OF ACTION

23.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 22 above.

24.     Section 515 of ERISA, 29 U.S.C. § 1145, requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement ... [to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

25.     Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), requires that in any action by a fiduciary to enforce Section 515 of ERISA in which judgment is awarded in favor of the plan, "the court shall award the plan—

(a)     the unpaid contributions,

(b)     interest on the unpaid contributions,

(c)     an amount equal to the greater of

(i)     interest on the unpaid contributions or;

(ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent ... of the amount determined by the court to under subparagraph (A),

(d)     reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(e)     such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan....

26.     Port Elizabeth has failed to make certain required contributions to the NNJ Plan for the period covered by the Audit, in violation of the CBAs and the Trust Agreement. This constitutes a failure to make contributions in accordance with the terms of the plan documents and is a violation of Section 515 of ERISA, 29 U.S.C. § 1145, thereby giving rise to an action pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).

27.     As a result of this failure, Port Elizabeth owes the NNJ Plan $26,432.00 in total unpaid contributions for the period covered by the Audit as set forth in Section 502(g)(2)(A) of ERISA; accrued interest through March 31, 2014 in the amount of $4,066.42 plus additional interest at the rate of 12% per annum from April 1, 2014 until the date payment is received as set forth in Section 502(g)(2)(B) of ERISA; liquidated damages as set forth in Section 502(g)(2)(C) of ERISA; and all attorney's fees and costs incurred by the NNJ Plan in seeking payment of any and all amounts due, including but not limited to, $1,425.00 for the cost of the Audit as set forth in Sections 502(g)(2)(D) and 502(g)(2)(E) of ERISA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter a judgment:

1.      Declaring that the CBAs and the Trust Agreement require that Port Elizabeth pay the NNJ Plan the contributions, interest, liquidated damages and audit fees owing for the Audit period, as well as attorney's fees and costs; and

2.      Ordering Port Elizabeth to pay the NNJ Plan $26,432.00 in unpaid contributions for the Audit period, as required by the CBAs, the Trust Agreement, and ERISA Section 502(g)(2)(A), 29 U.S.C. § 1132(g)(2)(A); interest on the unpaid contributions at the rate of 12% per annum from the date the contributions were due until the date payment is received, as required by the Trust Agreement and ERISA Section 502(g)(2)(B), 29 U.S.C. § 1132(g)(2)(B);

and liquidated damages as required by the Trust Agreement and ERISA Section 502(g)(2)(C), 29 U.S.C. § 1132(g)(2)(C); and

3.      Awarding Plaintiff reasonable attorney's fees and costs of this action, as well as the $1,425.00 in audit fees pursuant to Sections 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2) and the Trust Agreement; and

4.      Granting such other and further legal and equitable relief as this Court may deem just and proper.

Dated: New York, New York
        January 31, 2018

By: /s/ Lisa M. Gomez
    Lisa M. Gomez (LMG 7357)
    COHEN, WEISS AND SIMON LLP
    900 Third Avenue
    21st Floor
    New York, New York 10022
    Tel: (212) 563-4100
    Fax: (646) 473-8235
    lgomez@cwsny.com

    *Attorneys for Plaintiff*